**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| TIFFANY AUTUMN LUNA-VIDES, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Civil No. 4:24-cv-03215 |
| v. | ) | |
| | ) | Judge Charles R. Eskridge III |
| SABRINA ANNLYNN CARPENTER, | ) | Magistrate Judge Christina A. Bryan |
| and ISLAND DEF JAM MUSIC | ) | |
| GROUP, | ) | |
| | ) | |
| Defendants. | | |

**DEFENDANTS' MOTION TO DISMISS**
**PLAINTIFF'S COMPLAINT AND MEMORANDUM OF LAW IN SUPPORT**

## **TABLE OF CONTENTS**

I.   Statement of the Nature and Stage of Proceedings ................................... 1

II.   Introduction and Statement of Facts ..................................................... 2

III.   Statement of the Issues Requiring Resolution ....................................... 5

IV.   Standards of Review ......................................................................... 5

V.   Argument ........................................................................................ 6

    A.   Plaintiff's Complaint Fails to State a Claim for Copyright Infringement as a Matter of Law ............................................................................. 6

        1.   Plaintiff's Access Theory Is Not Plausible. ...................................... 6

            a.   Plaintiff Has Not Pled A Plausible Chain of Events Linking Her Work and Defendants' Access. .......................... 7

            b.   Plaintiff Has Not Pled That Her Work Has Been Widely Disseminated. ...................................................... 12

        2.   Plaintiff Has Not Pled That Defendants' Work Is "Strikingly Similar" (Or Even Substantially Similar) to Her Work. ................. 13

    B.   Plaintiff Cannot Establish Personal Jurisdiction Over Ms. Carpenter. ....... 17

VI.   Conclusion ..................................................................................... 18

## TABLE OF AUTHORITIES

**Cases**

*Art Attacks Ink, LLC v. MGA Entm't Inc.*,
  581 F.3d 1138 (9th Cir. 2009) ....................................................................7

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ....................................................................................5

*Astor-White v. Strong*,
  817 F. App'x. 502 (9th Cir. 2020) ............................................................11

*Basile v. L.A. Film Sch., LLC*,
  No. 2:18-08604-CJC (ADS), 2019 WL 5377126 (C.D. Cal. Sept. 30, 2019) ..............11

*Batts v. Adams*,
  No. CV 10-8123-JFW (RZx), 2011 WL 13217923 (C.D. Cal. Feb. 8, 2011) .........11, 12

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ....................................................................................5

*Bernal v. Paradigm Talent & Literary Agency*,
  788 F. Supp. 2d 1043 (C.D. Cal. 2010) ....................................................14

*Briggs v. Blomkamp*,
  70 F. Supp. 3d 1155 (N.D. Cal. 2014) ......................................................11

*Champion v. U.S.*,
  421 F. App'x 418 (5th Cir. 2011) ...............................................................6

*Deutsche Bank Nat'l Trust Co. v. Cardona*,
  No. 7:16-CV-448, 2017 WL 2999272 (S.D. Tex. Apr. 20, 2017) ................2

*Douglass v. United Servs. Auto. Ass'n.*,
  65 F.3d 452 (5th Cir. 1995) .........................................................................6

*Ferguson v. Nat'l Broad. Co.*,
  584 F.2d 111 (5th Cir. 1978) ..................................................................6, 13

*Greer v. Carpenters Landing HOA*,
  No. 4:19-cv-03436, 2020 WL 10051756 (S.D. Tex. Sept. 3, 2020) ............3

*Guzman v. Hacienda Recs. & Recording Studio, Inc.*,
  808 F.3d 1031 (5th Cir. 2015) .................................................................3, 4

*Haines v. Kerner*,
 404 U.S. 519 (1972).............................................................................................6

*Hayes v. Keys*,
 No. CV 14-6246 PA (JEMx), 2015 WL 12734010 (C.D. Cal. Jan. 7, 2015)...............13

*Hayes v. Minaj*,
 No. 2:12-cv-07972-SVW-SH, 2012 WL 12887393 (C.D. Cal. Dec. 18, 2012)......12, 13

*Johnston v. Multidata Sys. Int'l Corp.*,
 523 F.3d 602 (5th Cir. 2008) ...............................................................................5

*Jorgensen v. Epic/Sony Records*,
 351 F.3d 46 (2d Cir. 2003) ..................................................................................11

*Kew v. Bank of Am., N.A.*,
 No. H-11-2824, 2012 WL 1414978 (S.D. Tex. Apr. 23, 2012) ....................................2

*Litchfield v. Spielberg*,
 736 F.2d 1352 (9th Cir. 1984) .............................................................................16

*Loomis v. Cornish*,
 836 F.3d 991 (9th Cir. 2016) ............................................................................6, 7

*Loomis v. Cornish*,
 No. CV 12-5525 RSWL (JEMx), 2013 WL 6044345 (C.D. Cal. Nov. 13, 2013) ........12

*Meta-Film Assocs., Inc. v. MCA, Inc.*,
 586 F. Supp. 1346 (C.D. Cal. 1984) ....................................................................10

*Payton v. U.S.*,
 550 F. App'x 194 (5th Cir. 2013) ..........................................................................6

*Pratt v. Raymond*,
 462 F. App'x 22 (2nd Cir. 2012) .........................................................................15

*Rentmeester v. Nike, Inc.*,
 883 F.3d 1111 (9th Cir. 2018) ............................................................................14

*Ruston GasTurbines, Inc. v. Donaldson Co., Inc.*,
 9 F.3d 415 (5th Cir. 1993) ...................................................................................6

*Schkeiban v. Cameron*,
 No. CV 12-0636-R (MANx), 2012 WL 12895721 (C.D. Cal. July 20, 2012)...............7

*Seals-McClellan v. Dreamworks, Inc.*,
   120 F. App'x 3 (9th Cir. 2004) ................................................................. 16

*Skidmore v. Led Zeppelin*,
   952 F.3d 1051 (9th Cir. 2020) ............................................................ 7, 14

*Smith v. Jackson*,
   84 F.3d 1213 (9th Cir. 1996) ................................................................. 14

*Three Boys Music Corp. v. Bolton*,
   212 F.3d 477 (9th Cir. 2000) ............................................................... 7, 11

*Tisi v. Patrick*,
   97 F. Supp. 2d 539 (S.D.N.Y. 2000) ..................................................... 13

*Towler v. Sayles*,
   76 F.3d 579 (4th Cir. 1996) ...................................................................... 7

*U.S. ex rel. Spicer v. Westbrook*,
   751 F.3d 354 (5th Cir. 2014) .................................................................... 5

*Wilmington v. Bay Area Utilities, LLC*,
   No. H-15-3031, 2015 WL 7779332 (S.D. Tex. Dec. 2, 2015) ....................... 2

*Wilson v. Belin*,
   20 F.3d 644 (5th Cir. 1994) ...................................................................... 5

**Rules**

FED. R. CIV. P. 12(b) ................................................................................... 1

FED. R. CIV. P. 12(b)(2) .......................................................................... 1, 5

FED. R. CIV. P. 12(b)(6) ............................................................................. 1

FED. R. CIV. P. 12(d) ................................................................................. 3

FED. R. CIV. P. 4 ....................................................................................... 1

FED. R. EVID. 201(b) ............................................................................ 2, 14

iv

The Court should dismiss Plaintiff Tiffany Autumn Luna-Vides' ("Plaintiff") Complaint pursuant to Rule 12(b) of the Federal Rules of Civil Procedure. *First*, Plaintiff fails to state a claim for copyright infringement upon which relief may be granted, so the Court should dismiss her Complaint against Defendants Sabrina Annlynn Carpenter ("Carpenter") and Island Records, a division of UMG Recordings, Inc. (improperly named herein as "Island Def Jam Music Group") ("UMG"), (Carpenter and UMG, collectively, "Defendants") under Rule 12(b)(6). *Second*, and independently, Ms. Carpenter is not subject to personal jurisdiction in this Court, so the Court should dismiss Plaintiff's Complaint against Ms. Carpenter for lack of personal jurisdiction under Rule 12(b)(2).

## I.    STATEMENT OF THE NATURE AND STAGE OF PROCEEDINGS

Plaintiff appears to have initiated this lawsuit on or about August 1, 2024. (ECF No. 1 at 5.) The Court granted Plaintiff's application to appear *in forma pauperis* on or about August 27, 2024, (ECF No. 4), and that is when the Complaint was filed.

To the best of Defendants' knowledge, Plaintiff has not served the Complaint and any summons on either of them, as required by Rule 4 of the Federal Rules of Civil Procedure. The documents that Plaintiff appears to have attempted to serve (via email and/or certified mail) are the September 19, 2024 Order for Conference and Disclosure of Interested Parties (ECF No. 6) and the September 19, 2024 Scheduling and Docket Control Order (ECF No. 7), (ECF Nos. 9–10), and the Marshalls' "undeliverable" summons return receipts, (ECF Nos. 12–13). Defendants offered to waive service, but Plaintiff neither accepted nor responded to that offer. Defendants are willing to waive service and proceed to the merits (or lack thereof) of Plaintiff's case.

The Court referred this case to Magistrate Judge Bryan, (ECF No. 5), who set a December 9, 2024 initial pretrial conference.  (ECF No. 6.)  Judge Bryan subsequently reset the initial pretrial conference to February 18, 2025.  (ECF No. 11.)

## II.    INTRODUCTION AND STATEMENT OF FACTS

This action involves Plaintiff's allegation that award-winning pop icon Sabrina Carpenter's smash hit "Espresso" infringes Plaintiff's musical composition copyright in a song entitled "I'm In Love" ("Plaintiff's Song").  Plaintiff does not plausibly allege, let alone demonstrate, that Ms. Carpenter (or anyone associated with her) had access to Plaintiff's Song such that "Espresso" could be the result of any copying.  Nor does Plaintiff allege that "Espresso" bears any similarity to Plaintiff's Song.

The sole "factual" allegation in Plaintiff's Complaint is that Ms. Carpenter allegedly "ripped off" Plaintiff's Song—specifically the "beat," along with the lyrics "shading" Plaintiff—while she was hanging out with Plaintiff's "public ex" Justin Bieber and his wife Hailey.  (ECF No. 1 at 4.)  Setting aside the conclusory nature of this allegation, the facial deficiencies in Plaintiff's Complaint may not be cured in whole or in part by any amendment, because the incontrovertible facts demonstrate that Ms. Carpenter's song "Espresso" was independently created as early as July 2023, long before Plaintiff's Song was first allegedly published on October 23, 2023.  (**Ex. A**,[1] Printout of information

---

[1] The Court may take judicial notice of public records.  FED. R. EVID. 201(b); *see also, e.g.*, *Deutsche Bank Nat'l Trust Co. v. Cardona*, No. 7:16-CV-448, 2017 WL 2999272, at *2 n.4 (S.D. Tex. Apr. 20, 2017); *Wilmington v. Bay Area Utilities, LLC*, No. H-15-3031, 2015 WL 7779332, at *1 n.3, *2 (S.D. Tex. Dec. 2, 2015); *Kew v. Bank of Am., N.A.*, No. H-11-2824, 2012 WL 1414978, at *3 n.4 (S.D. Tex. Apr. 23, 2012).  Plaintiff specifically identified this registration as her copyright registration in a prior,

associated with Copyright Registration No. PA0002479655.)  The Court should dismiss Plaintiff's Complaint with prejudice.

*First*, copyright infringement requires "factual copying," which requires proof of access to the allegedly infringed work.  *E.g.*, *Guzman v. Hacienda Recs. & Recording Studio, Inc.*, 808 F.3d 1031, 1037 (5th Cir. 2015).  But Plaintiff has not alleged any plausible theory by which Defendants obtained access to Plaintiff's Song.  Nor can she. Indeed, Plaintiff's public statements demonstrate that her access theory is pure conjecture. Fueled by a belief that the Biebers "continue to aggravatedly [sic] stalk and harass" her, (**Ex. C**,[2] Petition at 1, *Luna-Vides v. Bieber*, No. 2024-02389 (281st Dist. Ct., Harris County, Tex. Jan. 12, 2024); *see* ECF No. 1 at 4 (allegedly "aggravated stalking and harassment")), Plaintiff admittedly "guesses" that the Biebers decided to "form an alliance" with Ms. Carpenter, (**Ex. D** at 5, Tiffany A. Luna, *Bad Apples In The Industry*, https://tiffanyaluna.com/bad-apples-in-the-industry/ (last visited Dec. 9, 2024)), whereby the Biebers, inexplicably, hatched a scheme to "put [Ms. Carpenter] against" Plaintiff, (ECF No. 1 at 4.)  Plaintiff musters a vague allegation that the Biebers "hung out" with

---

now-dismissed, litigation.   (**Ex. B**, Opposition to Motion to Dismiss for Lack of Jurisdiction at 1, *Luna-Vides v. Carpenter*, No. 2024-27736 (152nd Dist. Ct., Harris County, Tex. Aug. 28, 2024).)   Alternatively, pursuant to Rule 12(d), the Court may convert this Rule 12(b)(6) motion into a Rule 56 motion for summary judgment and consider extrinsic materials.  FED. R. CIV. P. 12(d); *see Greer v. Carpenters Landing HOA*, No. 4:19-cv-03436, 2020 WL 10051756, at *2 (S.D. Tex. Sept. 3, 2020).

[2] Plaintiff refers to her State Court case against the Biebers in her Complaint by case number.  (ECF No. 1 at 4.)  Moreover, the Court may take judicial notice of public records. *See* Footnote 1.

Ms. Carpenter "in the week the song was released," (i.e., at the Coachella Music Festival in mid-April 2024), and, presumably, somehow passed Plaintiff's Song to Ms. Carpenter at that time.  (ECF No. 1 at 4.)

Plaintiff's access theory is not only illogical on its face, but is also belied by the facts that:  (i) Ms. Carpenter and her co-writers began working on "Espresso" in July 2023; (ii) the "Espresso" sound recording was completed, its accompanying music video was filmed, and both were released to the public before Coachella in 2024; and (iii) Ms. Carpenter performed the song live during her headlining set at Coachella, which occurred days before any purported chance encounter with the Biebers alleged by Plaintiff.

*Second*, copyright infringement requires "probative similarity."  *E.g.*, *Guzman*, 808 F.3d at 1037.  Setting aside the facial implausibility of Plaintiff's access theory, Plaintiff fails to allege that Plaintiff's Song and "Espresso" are in any way similar—let alone strikingly, or even substantially, similar.  In fact, this Court can readily determine, by performing a side-by-side comparison, that the two works do not share any lyrical, thematic, or other similarities whatsoever.

*Finally*, Plaintiff's claims against Ms. Carpenter must be dismissed because this Court lacks personal jurisdiction over Ms. Carpenter and Plaintiff fails to allege otherwise. Indeed, because Ms. Carpenter is a California resident with no business relationship, office, employees, or operations in Texas, no amendment can save Plaintiff's claims against Ms. Carpenter.

## III.    STATEMENT OF THE ISSUES REQUIRING RESOLUTION

1.    Whether Plaintiff's claim should be dismissed for failure to state a claim upon which relief can be granted?

2.    Whether Plaintiff's claim against Ms. Carpenter should be dismissed for lack of personal jurisdiction?

## IV.    STANDARDS OF REVIEW

A complaint that lacks "enough facts to state a claim to relief that is plausible on its face" must be dismissed.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  While the Court must "accept all well-pleaded factual allegations as true and interpret the complaint in the light most favorable to the plaintiff, '[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements,' do not establish facial plausibility." *U.S. ex rel. Spicer v. Westbrook*, 751 F.3d 354, 365 (5th Cir. 2014) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 678.

Rule 12(b)(2) requires that a court dismiss a claim if the court does not have personal jurisdiction over the defendant.  Due process only permits the exercise of personal jurisdiction over a nonresident defendant when that defendant has "purposely availed himself of the benefits and protections of the forum state by establishing 'minimum contacts'" with the forum state and the exercise of jurisdiction over the defendant does not offend "traditional notions of fair play and substantial justice."  *Johnston v. Multidata Sys. Int'l Corp.*, 523 F.3d 602, 609 (5th Cir. 2008) (quoting *Wilson v. Belin,* 20 F.3d 644, 647 (5th Cir. 1994)).  The non-resident's purposeful availment must be such that the defendant

should reasonably anticipate being hauled into court in the forum state.  *Ruston GasTurbines, Inc. v. Donaldson Co., Inc.*, 9 F.3d 415, 419 (5th Cir. 1993).

A *pro se* plaintiff's Complaint "is entitled to a liberal reading."  *Payton v. U.S.*, 550 F. App'x 194, 195 (5th Cir. 2013) (citing *Haines v. Kerner*, 404 U.S. 519, 520 (1972)). "Nevertheless, the liberal *pro se* pleading standard still demands compliance with procedural standards."  *Id.* (citing *Douglass v. United Servs. Auto. Ass'n.*, 65 F.3d 452, 455 n.4 (5th Cir. 1995)); *see Champion v. U.S.*, 421 F. App'x 418, 423 (5th Cir. 2011).

## V.    ARGUMENT

### A.    Plaintiff's Complaint Fails to State a Claim for Copyright Infringement as a Matter of Law.

A copyright infringement claim requires proof of copying by the defendant or person who composed the defendant's work.  *See Ferguson v. Nat'l Broad. Co.*, 584 F.2d 111, 113 (5th Cir. 1978).

> Since there is seldom direct evidence of "copying," the plaintiff generally proves this element by showing that the person who composed the defendant's work had access to the copyrighted work and that the defendant's work is substantially similar to the plaintiff's.  If the two works are so strikingly similar as to preclude the possibility of independent creation, copying may be proved without a showing of access.

*Id.*  Plaintiff has not—and cannot—adequately plead either access or striking similarity, so the Court must dismiss her Complaint.

#### 1.    Plaintiff's Access Theory Is Not Plausible.

To establish access, Plaintiff must show "a reasonable possibility, not merely a bare possibility that an alleged infringer had the chance to view the protected work."  *Loomis v. Cornish*, 836 F.3d 991, 995 (9th Cir. 2016) (quoting *Art Attacks Ink, LLC v. MGA Entm't*

*Inc.*, 581 F.3d 1138, 1143 (9th Cir. 2009)).  But Plaintiff's Complaint only offers the barest of a possibility of access.  "Access may not be inferred through mere speculation or conjecture."  *Three Boys Music Corp. v. Bolton*, 212 F.3d 477, 482 (9th Cir. 2000), *overruled on other grounds by Skidmore v. Led Zeppelin*, 952 F.3d 1051 (9th Cir. 2020). Instead, access must be proven "either by (1) establishing a chain of events linking the plaintiff's work and the defendant's access, or (2) showing that the plaintiff's work has been widely disseminated."  *Loomis*, 836 F.3d at 995 (quoting *Art Attacks*, 581 F.3d at 1143).  Plaintiff fails to make either showing of "access" required to support her copyright infringement claim.

### a.   Plaintiff Has Not Pled A Plausible Chain of Events Linking Her Work and Defendants' Access.

Plaintiff's pleading regarding access centers solely on her claim that Ms. Carpenter purportedly "hung out" with Plaintiff's alleged ex-fiancé, Justin Bieber, and his wife, Hailey Bieber, in the week that "Espresso" was released, and that the Biebers allegedly "put Sabina against [Plaintiff] and copyright infringe [sic] off my song."  (ECF No. 1 at 4.) Simply put, this is not enough.  To plausibly allege access under a "chain of events" theory, Plaintiff is required to plead "facts showing a chain of events from [the intermediary] to [Defendants] and … [that] their relationship is sufficiently strong to raise a reasonable possibility of access."  *Schkeiban v. Cameron*, No. CV 12-0636-R (MANx), 2012 WL 12895721, at *1 (C.D. Cal. July 20, 2012) (granting motion to dismiss because Plaintiff "merely speculates without factual support that [the third-party intermediary] acted as he said"); *see Towler v. Sayles*, 76 F.3d 579, 583 (4th Cir. 1996) ("A court may infer … a

reasonable possibility of access if the author sent the copyrighted work to a third party intermediary who has a close relationship with the infringer," like "she supervises or works in the same department or contributes creative ideas to [the alleged infringer]."). Plaintiff's solitary allegation that Ms. Carpenter allegedly "hung out" with the Biebers "in the week the song was released," (ECF No. 1 at 4), simply cannot meet this standard.

Plaintiff fails to plead any specific dates when Ms. Carpenter allegedly "hung out" with the Biebers. The only insight into Plaintiff's claim is found in her musings on her website. There, Plaintiff describes her belief that Ms. Carpenter "hung out" with the Biebers on April 13, 2024, the day *after* she believes Ms. Carpenter's "Espresso" premiered.

> Sabrina Carpenter plagiarized off my song "I'm In Love" with her latest release "Espresso", which was premiered on Friday, April 12, 2024.



> Not only does it obviously sound alike, I know this with absolute certainty because she hung out with my public ex and his snake "wife" on April 13th, 2024 at this year's Coachella. And I'm sure they hung out also when I was on in my personal life between April 11, 2024 to April 13th, 2024, when they were aggravatedly [sic] harassing off my work phone, tryna [sic] f* with my mind."

(**Ex. D** at 3.)

As aforementioned, Justin and Jezebel stalk me (spiritually, ***especially***!), so before this oncoming moment, they saw that I had a "new" song added to my music on one of my personal social medias,



where it has a "Sabrina Carpenter" song, ***and that's where I guess they decided to form an alliance with Sabrina Carpenter, and attack me***."

(*Id.* at 5 (second emphasis added).)

Plaintiff's access theory hinges on her alleged romantic relationship with "public ex" Justin Bieber, (ECF No. 1 at 4; *see also* **Ex. D** at 3) whom she claims that she dated from April 2021 until she "left Justin" in March 2023, (**Ex. D** at 19).   Plaintiff never explains how she met or started "dating" Justin Bieber when she lives in Texas and he lives in California, and there is no public record of any relationship between them.   (Moreover, as a matter of public record, Justin and Hailey Bieber have been married since 2018.)

Plaintiff's sole proof of the purported alliance between the Biebers and Ms. Carpenter appears to be a screenshot from a YouTube Video posted on a fan site called "Sabrina Carpenter All-Videos from Sabrina Carpenter" (@sabrinacarpenterallvideos), as shown above.   (**Ex. D** at 3.)   This "proof" consists of an approximately 12 second-long, blurry video, appearing on this YouTube account page, in which Ms. Carpenter and the

Biebers appear to be walking in entirely separate groups, escorted by their own security details or entourages, while fans film and scream out to them.

Notably, this video purports on its face to have been taken on April 13, 2024, and was posted to the site on April 14, 2024.  (**Ex. D** at 3.)  Thus, once again, Plaintiff's own "evidence" confirms that, even assuming Plaintiff's version of the supporting facts, any exchange of Plaintiff's Song from the Biebers to Defendant Carpenter while "hanging out" could have occurred only ***after*** Defendants already had released "Espresso" to the public, on April 11, 2024.  Indeed, according to Plaintiff's website and Complaint (not to mention the public record), Defendants released "Espresso" on Thursday, April 11, 2024—two days before the Coachella video was recorded—and Ms. Carpenter premiered "Espresso" on Friday, April 12, 2024 live at Coachella—the day before the Coachella video was recorded. (**Ex. D** at 3; *see* ECF No. 1 at 4.)  So, even assuming the Biebers and Ms. Carpenter all arrived at Coachella several days before Ms. Carpenter's performance, it is implausible that the Biebers could have given Plaintiff's Song to Ms. Carpenter, with enough time to allow Ms. Carpenter to (i) write, record, engineer, and master "Espresso," (ii) conceive, cast, and film a music video for it, and then (iii) release both the track and music video through her record label UMG, all by April 11, 2024!

Plaintiff's Complaint is the type of "tortious chain of hypothetical transmittals" that is too attenuated to constitute any "reasonable opportunity to view" Plaintiff's Song prior to the creation of the song "Espresso."  *Meta-Film Assocs., Inc. v. MCA, Inc*., 586 F. Supp. 1346, 1355 (C.D. Cal. 1984).  Plaintiff pleads no actual facts to support her theory, rendering it nothing more than "mere speculation" that is "completely unsubstantiated."

In her own words, Plaintiff simply "guesses" that the Biebers somehow saw her song on her social media posting.  (**Ex. D** at 5.)  This conjecture is insufficient as a matter of law to support a finding that there was a reasonable possibility that Ms. Carpenter accessed Plaintiff's Song.  *See, e.g.*, *Astor-White v. Strong*, 817 F. App'x. 502, 503 (9th Cir. 2020) (quoting *Three Boys*, 212 F.3d at 482) (affirming dismissal without leave to amend because "mere allegation" that people plaintiff shared his work with moved in similar circles' as [defendant] does not establish that [defendant] had a 'reasonable opportunity or reasonable possibility of viewing" the allegedly infringed work); *Briggs v. Blomkamp*, 70 F. Supp. 3d 1155, 1166 (N.D. Cal. 2014) (noting that plaintiff did "no more than suggest a bare possibility of access," where he alleged a "media-savvy" film-maker could have accessed his work from a website); *see also Jorgensen v. Epic/Sony Records*, 351 F.3d 46, 49 n.2 (2d Cir. 2003) ("reject[ing] as unsubstantiated [plaintiff's] theory of access via an alleged [] 'conspiracy,'" by which someone plaintiff "never met, spoke[] to or sent music to" somehow "played a central role" in providing access to defendants).  "An inference of access requires more than a mere allegation that someone known to the defendant possesses the work in question."  *Batts v. Adams*, No. CV 10-8123-JFW (RZx), 2011 WL 13217923, at *3 (C.D. Cal. Feb. 8, 2011); *see Basile v. L.A. Film Sch., LLC*, No. 2:18-08604-CJC (ADS), 2019 WL 5377126, at *1 (C.D. Cal. Sept. 30, 2019) (recommending dismissal of claims based on "fantastical conspiracy theory").

Moreover, the unsupported allegation that Ms. Carpenter allegedly "ripped off" Plaintiff's Song after hanging out with the Biebers "is a mere conclusion, devoid of facts to support an inference that [Defendants] directly accessed the song," and is independently

fatal to Plaintiff's claims. *See Hayes v. Minaj*, No. 2:12-cv-07972-SVW-SH, 2012 WL 12887393, at *3 (C.D. Cal. Dec. 18, 2012) (dismissing infringement claim where "bald allegation that [defendant] 'took the content'" was a legal conclusion not accepted as true at the pleading stage).

<blockquote>b.    *Plaintiff Has Not Pled That Her Work Has Been Widely Disseminated.*</blockquote>

Plaintiff's Complaint has no factual assertions regarding her fame or wide-spread distribution of Plaintiff's Song, or any other facts to support such an inference. (ECF No. 1.) "In most cases, the evidence of widespread dissemination centers on the degree of a work's commercial success and on its distribution through radio, television, and other relevant mediums." *Id.* Legally, "the public dissemination necessary to infer that a defendant might have had access to the work is considerable." *Loomis v. Cornish*, No. CV 12-5525 RSWL (JEMx), 2013 WL 6044345, at *10 (C.D. Cal. Nov. 13, 2013), *aff'd*, 836 F.3d 991 (9th Cir. 2016). "[F]or a work to be widely disseminated, it must achieve a high degree of commercial success or be readily available in the market." *Id.*

Resorting to the public record, it appears that Plaintiff may have posted Plaintiff's Song on the Internet, either on her own website or on YouTube. But "[t]he availability of a copyrighted work on the Internet, in and of itself, is insufficient to show access through widespread dissemination." *Loomis*, 2013 WL 6044345, at *12, *aff'd*, 836 F.3d 991 (9th Cir. 2016). "[T]he posting of videos and/or songs on YouTube, Amazon.com, and iTunes by an unknown singer" constitutes "quite limited" dissemination that is "clearly insufficient to support a finding of access." *Adams*, 2011 WL 13217923, at *4; *see*

*Hayes v. Keys*, No. CV 14-6246 PA (JEMx), 2015 WL 12734010, at *2 (C.D. Cal. Jan. 7, 2015) (finding that a solitary allegation that a "work was uploaded to YouTube" insufficient to plead a fact or inference of widespread dissemination); *Minaj*, 2012 WL 12887393, at *3 (dismissing case because YouTube song post "does not imply it was disseminated widely, and the Complaint provide[d] no other facts to support such an inference").   Accordingly, Plaintiff has not pleaded the "widespread dissemination" necessary to establish this access element of her copyright claim.

2.    <u>Plaintiff Has Not Pled That Defendants' Work Is "Strikingly Similar" (Or Even Substantially Similar) to Her Work.</u>

Without plausible allegations of actual access, Plaintiff would have to allege that "Espresso" is "so strikingly similar [to Plaintiff's Song] as to preclude the possibility of independent creation …." *Ferguson*, 584 F.2d at 113.  Here, Plaintiff does not allege any similarities in her Complaint, only vague, general statements of "rip[ing] off my song," and mere allegations that Plaintiff's Song and Defendants' song "Espresso" have a similar "beat, along with the lyrics 'shading' [Plaintiff]."  (ECF No. 1 at 4.)

*First*, if by "beat" Plaintiff is referring to the "rhythm" of the two songs, federal courts have long held that rhythms (including simple beats) are not copyrightable as a matter of law.  *See Tisi v. Patrick*, 97 F. Supp. 2d 539, 548–49 (S.D.N.Y. 2000).

*Second*, if Plaintiff's vague reference to lyrics allegedly "shading" her can be construed as alleging lyrical similarity, Plaintiff's Complaint does not identify any specific similarity between the two sets of lyrics.  This is unsurprising, as a side-by-side comparison reveals that there is literally no similarity—let alone substantial similarity—between the

13

lyrics of these two songs, either in their express word usage or themes.  (*Compare* **Ex. E**,[3] transcription of lyrics for Plaintiff's Song, *with* **Ex. F**,[4] lyrics of "Espresso".)  Substantial similarities probative of copying require "similarities one would not expect to arise if the two works had been created independently."  *Rentmeester v. Nike, Inc.*, 883 F.3d 1111, 1117 (9th Cir. 2018), *overruled on other grounds by Led Zeppelin*, 952 F.3d 1051.  That is, they must be similarities that "are due to copying rather than … coincidence, independent creation, or prior common source."  *Led Zeppelin*, 952 F.3d at 1064 (quoting *Bernal v. Paradigm Talent & Literary Agency*, 788 F. Supp. 2d 1043, 1052 (C.D. Cal. 2010)).  Elements (like love or romance) that are commonplace or generic do not suffice because the "similarities that [a plaintiff] attribute[s] to 'copying' could actually be explained by the commonplace presence of the same or similar [elements] within the relevant field."  *Smith v. Jackson*, 84 F.3d 1213, 1219 (9th Cir. 1996).

*Third*, Plaintiff's solitary allegation that "Espresso" was "ripped off" from Plaintiff's Song does not allege any common concepts or otherwise identify any supposedly similar musical notes or rhyming scheme, and none is apparent from a comparison of the works.  Even construing these facts in a light most favorable to Plaintiff,

---

[3] Plaintiff references her song "I'm In Love" in her Complaint by title.  (ECF No. 1 at 4.) The Court may take judicial notice of facts not subject to reasonable dispute because they "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."  FED. R. EVID. 201(b).  This transcription of the lyrics of Plaintiff's Song is from the "Official Lyrics Video" of Plaintiff's Song that Plaintiff herself appears to have posted to YouTube.

[4] Likewise, Plaintiff references the allegedly infringing song "Espresso" in her Complaint by title.  (ECF No. 1 at 4.)

the two songs are not substantially similar.  As noted above, there is simply no similarity (save sporadic, single, generic words) between the lyrics in the two songs.  Moreover, the two songs have substantially different themes.  Plaintiff's lyrics for "I'm In Love" reflect a woman relishing being so "intoxicatingly" in love that her "heart and mind races," and she's inspired to be the best that she can be while dreaming of spending her whole life with her lover.  (**Ex. E**).  By contrast, "Espresso" is a female empowerment anthem, using espresso as a metaphor for a woman whose presence captivates and keeps men up at night. It is filled with cheeky double entendre', in which the protagonist boasts about her magnetism and sexual prowess, yet is indifferent, and even contemptuous, about the fact that she has the subject of the song "thinking about [her] every night" and "wrapped around [her] finger."  (**Ex. F**.)  The central lyrics and theme of "Espresso" are about embracing one's self-confidence as a woman, and seeing femininity as a superpower.  (**Ex. F**; **Ex. J** ¶ 9.)  These are entirely different expressions of the theme of relationships and attitudes of a woman toward her lover.  In sum, the Court can employ the ordinary observer test to conclude that the two songs are "lyrically and musically distinct," *Pratt v. Raymond*, 462 F. App'x 22, 24 (2nd Cir. 2012), and are only similar insofar as they both describe each singer's attitude—albeit very different ones—toward a romantic relationship.

Here, Plaintiff appears to contort coincidence of a few common words in song lyrics, common pop beats, and two pop stars reported in close geographic proximity into her claim of copyright infringement.  Ultimately, "[a]s is too often the case, [the] action [is] premised partly upon a wholly erroneous understanding of the extent of copyright protection; and partly upon the obsessive conviction, so common among authors and composers, that all

similarities between their works and any other which appear later must inevitably be ascribed to plagiarism." *Litchfield v. Spielberg*, 736 F.2d 1352, 1357 (9th Cir. 1984).

Furthermore, "[t]o show a striking similarity between works, a plaintiff must produce evidence that the accused work ***could not possibly*** have been the result of independent creation." *Seals-McClellan v. Dreamworks, Inc*., 120 F. App'x 3, 4 (9th Cir. 2004). Plaintiff's allegations can neither meet this standard, nor overcome the unassailable facts confirming that "Espresso" was independently created.

Ms. Carpenter conceived the idea for, and started writing, "Espresso," while on tour in France in July 2023, months before Plaintiff's Song was released and almost a year prior to any purported "hang out" with the Biebers at Coachella. (**Ex. G**, Carpenter Decl. ¶¶ 9–10.) Ms. Carpenter worked with other collaborators (including Julian Benetta, Stephenie Jones, and Amy Allen) on its lyrics, musical composition and sound recording at Perch Studios in Calabasas, California, and The Nest Recording Studio in Nashville, Tennessee from July 2023 to February 2024, at which point the track largely was completed. (*Id.* ¶¶ 6, 10.) The accompanying music video for "Espresso" was principally filmed at Castaic Lake, in Los Angeles County, California, on March 26 and 27, 2024. (*Id.*)

UMG and Ms. Carpenter began teasing the release of "Espresso" as the first single from the Album as early as April 4, 2024, with press releases, social media posts, and billboard signage in California. (*Id.* ¶ 11.) Ms. Carpenter published social media posts about "Espresso" on or about April 8, 2024, along with its upcoming release date and cover artwork. (*Id.*) On or about April 11, 2024, UMG released the sound recording for "Espresso," as well as the music video. (*Id.*) Ms. Carpenter also performed "Espresso"

live for the first time during her concert set at the Coachella Music Festival in Indio, California on April 12, 2024.  (*Id.*; *see* **Ex. D** at 3.)

Ms. Carpenter has never discussed Plaintiff or Plaintiff's Song with the Biebers, nor did the Biebers play any of Plaintiff's music for Ms. Carpenter at any point in time.  (**Ex. G** ¶¶ 13–14.)  Prior to Plaintiff's litigation, Ms. Carpenter had never heard of (i) Plaintiff, (ii) her song "I'm In Love," (iii) her album Luminescence, or (iv) any of her music.  (*Id.* ¶ 13.)  Even assuming Plaintiff's account of facts, it would be impossible for the song "Espresso" to have been written, recorded, mastered, and released within 1–2 days from April 10, 2024 to April 12, 2024, as proffered by Plaintiff in the Complaint.

### B.    Plaintiff Cannot Establish Personal Jurisdiction Over Ms. Carpenter.

Plaintiff's Complaint impliedly, if not explicitly, suggests that this Court has personal jurisdiction over Ms. Carpenter, and that venue is proper in this Court.  Yet, Plaintiff fails to allege any causal nexus between Ms. Carpenter and the State of Texas.  (ECF No. 1.)  In reality, Ms. Carpenter has insufficient ties to the State of Texas to establish personal jurisdiction in this Court.

Ms. Carpenter resides in Los Angeles, California, having moved there from Pennsylvania as a teenager to pursue an acting career.  She has never (i) resided, (ii) owned or maintained property, or (iii) spent any significant amount of time in the State of Texas, other than on sporadic concert dates (perhaps half a dozen) on various national performance tours dating back to 2016.  Further, as detailed above, no aspect of the writing or recording process for the song "Espresso," or the filming of the accompanying music video, took place in Texas.  (**Ex. G** ¶ 9; *see id.* ¶¶ 9–10.)  All of the work on the song and music video

for "Espresso" took place in France, Tennessee, and California.  In the absence of any minimum contacts with the State of Texas, the Court should dismiss Plaintiff's Complaint against Ms. Carpenter for lack of personal jurisdiction.

## VI.    CONCLUSION

Plaintiff's Complaint for copyright infringement consists of nothing more than a tortured and implausible access theory and conclusory alleged similarities of "beat" and "lyrics" between Plaintiff's Song and "Espresso."  As a matter of law, what she alleges is woefully insufficient.  Consequently, Plaintiff's Complaint fails to plead a plausible claim of copyright infringement, and Plaintiff cannot overcome Ms. Carpenter's jurisdictional facts, which also support the conclusion that "Espresso" was independently created.  No additional facts or discovery can cure the absence of substantial similarity between these songs as a matter of law, and thus amendment would be futile.  Accordingly, Plaintiff's Complaint should be dismissed with prejudice and without leave to amend.  Also, Plaintiff's implied allegation that this Court has personal jurisdiction over Ms. Carpenter is unsupportable and contrary to known public facts.  Accordingly, Defendants respectfully request that the Court grant their Joint Motion and dismiss Plaintiff's Complaint.

Dated: December 23, 2024

OF COUNSEL:

Cathryn A. Berryman
State Bar No. 02252990
WINSTEAD PC
2728 N. Harwood Street, Suite 500
Dallas, Texas 75201
Tel.: 214.745.5400
Fax: 214.745.5390
Email: cberryman@winstead.com

Respectfully submitted,

*/s/ Michael D. Karson*
Michael D. Karson
   *Attorney-in-Charge*
   State Bar No. 24090198
   S.D. Texas Bar No. 3293023
WINSTEAD PC
2728 N. Harwood Street, Suite 500
Dallas, Texas 75201
Tel.: 214.745.5400
Fax: 214.745.5390
Email: mkarson@winstead.com

*Attorney for Defendants Sabrina Annlynn Carpenter and Island Records, a division of UMG Recordings, Inc.*

## CERTIFICATE OF COMPLIANCE

In accordance with the Honorable Charles R. Eskridge III's Court Procedures, the undersigned certifies that this brief complies with the applicable type-volume limitations.

With respect to ¶ 18(b) of the Court's Procedures, this brief has been prepared on American letter-size paper, 13-point font, and a minimum of 1" margins.  Except for lengthy quotations, headings, and footnotes, the text of this brief is double spaced.

With respect to ¶ 18(c) of the Court's Procedures, exclusive of the portions exempted by the Court's Procedures (e.g., case caption, table of contents, table of authorities, signature block, and certificates), this brief contains 4,996 words.  This certificate was prepared in reliance on the word count of the word-processing system (Microsoft Office Word LTSC Professional Plus 2021) used to prepare this brief.

*/s/ Michael D. Karson*
Michael D. Karson

## CERTIFICATE OF CONFERENCE

On December 11, 2024, I corresponded with Plaintiff Tiffany Autumn Luna-Vides via electronic mail to confer regarding the relief sought in the foregoing motion.  In my email, I described the bases for the foregoing motion and invited Plaintiff to discuss the issues further and to please let me know whether or not she opposed the motion to dismiss. Plaintiff responded on December 11, 2024 as follows: "I **completely** oppose."  This Motion is opposed.

*/s/ Michael D. Karson*
Michael D. Karson

20

## CERTIFICATE OF SERVICE

On December 23, 2024, I filed the foregoing document with the Clerk of the Court for the United States District Court for the Southern District of Texas.  I hereby certify that I have served the document on all counsel and/or *pro se* parties of record by a manner authorized by Federal Rule of Civil Procedure 5(b)(2):

> Tiffany Autumn Luna-Vides
> 6822 Avenue V, Unit # 2
> Houston, Texas 77011
> tiffanyslullaby@gmail.com
> business@tiffanyaluna.com

*/s/ Michael D. Karson*
Michael D. Karson

21